# UNITED STATES BANKRUPTCY COURT
## District of Colorado

| | |
|---|---|
| In re:   Lake Loveland Dermatology, P.C.<br><br>Debtor. | Case No. 19-11659 MER<br><br>Chapter 11 |
| Lake Loveland Dermatology, P.C.,<br><br>Plaintiff,<br>v.<br><br>790 Eisenhower, LLC,<br><br>Defendant. | Adv. Case No. ____-MER |

## ADVERSARY COMPLAINT AGAINST 790 EISENHOWER, LLC

Plaintiff Lake Loveland Dermatology, P.C., by and through undersigned counsel, hereby submits this Adversary Complaint Against 790 Eisenhower, LLC:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334(a) of Title 28 of the United States Code in that this proceeding arises in and is related to the above captioned Chapter 11 and concerns property of the Debtor in that case.

2. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

3. This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code and has specific jurisdiction to hear the fraudulent conveyance claim pursuant to Sections 544 and 548 of Title 11 of the United States Code.

4. This adversary proceeding is a core proceeding under 28 U.S.C. §157.

5. This matter is primarily a core proceeding and therefore the Bankruptcy Court has jurisdiction to enter a final order. However, in the event this case is determined to be a noncore proceeding then, and in that event, Plaintiff consents to the entry of a final order by the Bankruptcy Judge.

6. Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7. Plaintiff Lake Loveland Dermatology, P.C. ("LLD") is a professional corporation with its principal office located at 776 West Eisenhower Blvd., Loveland, Colorado 80537.

8. Defendant 790 Eisenhower, LLC ("790 Eisenhower") is a Colorado limited liability corporation with its principal office located at 4845 Valley Oak Drive, Loveland, CO 80538, Colorado.

## GENERAL ALLEGATIONS

9. LLD is a dermatology clinic based in Loveland, Colorado with several satellite offices throughout the state.

10. LLD filed a voluntary petition for Chapter 11 bankruptcy on March 8, 2019. *In re Lake Loveland Dermatology, P.C.*, 19-11659-MER (Bankr. D. Colo.).

11. LLD remains a debtor in possession and is in operation of its business.

12. Since its inception in 1997, 790 Eisenhower has been solely owned and operated by Patrick Lillis.

13. LLD was formed by Lillis in 1979 who, at the time, was a medically licensed dermatologist.

14. LLD was solely owned and operated by Lillis from 1979 until October 16, 2016.

15. LLD currently leases its Loveland location at 776 West Eisenhower Blvd. ("776") from 790 Eisenhower.

16. 790 Eisenhower first leased 776 to LLD on January 1, 2000 for a five-year term.

17. The parties extended the lease until December 31, 2007.

18. That lease auto-renewed until October 31, 2011.

2

19. 790 Eisenhower and LLD executed a new lease on November 1, 2011 for a ten-year term. The lease had a Year 1 rent of approximately $156,000 with an annual escalation of 3%. Lillis signed for both 790 Eisenhower and LLD.

20. Nine months into the 10-year term, on August 1, 2012, Lillis caused 790 Eisenhower and LLD to enter into a new lease for 776. This new lease was intended to replace and supersede the November 2011 lease. Lillis signed the August 2012 lease for both 790 Eisenhower and LLD.

21. The new lease increased Year 1 rent to approximately $259,000, an annual increase of over $103,000 and a monthly increase of approximately $9,000.

22. Because the base rent became substantially larger when compared with the November 2011 lease, each annual 3% increase would be in a larger amount than under the November 2011 lease.

23. The new lease extended the termination date from October 31, 2021 to July 31, 2022.

24. LLD was not in default of the November 2011 lease on or before executing the August 2012 lease.

25. LLD received no new consideration whatsoever in exchange for agreeing to pay more rent than under the existing, operative, November 2011 lease.

26. LLD has made all payments required under the August 2012 lease.

27. On June 1, 2016—less than five years into the 10-year lease term under the November 2011 lease—Lillis again caused 790 Eisenhower and LLD to enter into a new lease.

28. The June 2016 lease was intended to replace and supersede the August 2012 lease.

29. The June 2016 lease increased Year 1 rent to approximately $307,000. The then-applicable rental rate under the August 2012 lease was $291,500. Therefore, the August 2012 lease raised the base rent by over $15,000 annually or over $1,000 per month. Lillis signed the June 2016 lease for both 790 Eisenhower and LLD.

30. The June 2016 lease extended the termination date from July 31, 2022 to May 30, 2026.

31. LLD was not in default of the August 2012 lease on or before executing the June 2016 lease.

32. Again, LLD received nothing new from 790 Eisenhower in exchange for agreeing to pay more rent and remain in the property for an additional four years.

33. LLD has made all payments required under the June 2016 lease.

34. If the November 2011 lease were still operative, the annual rent today would be about $192,000 and the monthly rent would be approximately $16,000. Instead, LLD's annual rent is approximately $335,000 and the monthly rent is approximately $28,000.

35. In connection with the August 2012 lease and the June 2016 lease, 790 Eisenhower was required to provide some new value to LLD in exchange for LLD's agreement to pay higher rent and stay in the property longer.

36. Lillis did not cause LLD to be represented by counsel when executing the August 2012 lease and the June 2016.

37. Dr. Mott purchased LLD from Lillis on October 16, 2016.

38. Lillis did not disclose the November 2011 lease or August 2012 lease to Dr. Mott prior to selling LLD to him.

39. Rather, Lillis intentionally concealed the November 2011 and August 2012 lease from Dr. Mott prior to selling LLD to him.

40. Dr. Mott did not know about the existence of the November 2011 or August 2012 leases until 790 Eisenhower produced them on July 24, 2019 in response to a Rule 2004 subpoena.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

41. LLD realleges and reincorporates all prior allegations as if fully set forth herein.

42. An actual controversy exists between LLD, on the one hand, and 790 Eisenhower, on the other hand, concerning whether the June 2016 lease is void for lack of consideration.

43. This Court should enter a declaratory judgment to provide the parties relief from uncertainty concerning whether the June 2016 lease is void.

44. This Court should declare that the June 2016 lease is void and, as such, LLD is occupying 776 on a month-to-month basis and may quit at any time without penalty or other obligation.

45. Alternatively, the Court should enter a declaratory judgment that the November 2011 lease is the operative lease and LLD is, therefore, currently subject to that lease's terms.

### SECOND CLAIM FOR RELIEF
### (Equitable Subordination)

46. LLD realleges and reincorporates all prior allegations as if fully set forth herein.

47. Lillis caused LLD and 790 Eisenhower to enter into the August 2012 and June 2016 leases.

48. Both leases subjected LLD to higher rent for a longer term than the existing, operative, November 2011 lease.

49. 790 Eisenhower was, therefore, required to provide LLD with something of value in exchange for LLD paying higher rent for a longer term.

50. Because LLD never received anything of value from 790 Eisenhower in exchange for entering into the August 2012 and June 2016 leases, both leases are void and the November 2011 lease is the operative lease.

51. 790 Eisenhower, therefore, inequitably collected hundreds of thousands of dollars of illicit rent from LLD under the August 2012 and June 2016 leases.

52. 790 Eisenhower and Lillis caused LLD to pay the illicit rent to 790 Eisenhower.

53. By doing so, 790 Eisenhower gave itself an unfair advantage over LLD's other creditors, to those creditors' detriment.

54. Subordination of 790 Eisenhower's claims is not inconsistent with the Bankruptcy Code.

55. To the extent 790 Eisenhower is entitled to any funds from LLD's estate, it should be paid last amongst all unsecured creditors.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

56. LLD realleges and reincorporates all prior allegations as if fully set forth herein.

57. Because 790 Eisenhower did not provide anything of value to LLD in exchange for LLD entering into the August 2012 and June 2016 leases, both of which subjected LLD to a higher rent for a longer term, those two leases are void.

58. The November 2011 lease should have been the operative lease.

59. 790 Eisenhower collected higher rent under the August 2012 and June 2016 lease than it was otherwise entitled to for nearly seven years.

60. The amount of illicit rent collected by 790 Eisenhower since August 2012 exceeds $825,000.00.

61. 790 Eisenhower has, therefore, been enriched at LLD's expense in an amount equal to the delta between what would have been the November 2011 rent and what was the August 2012 and then June 2016 rent.

62. Given that LLD was not required to make such rent payments to 790 Eisenhower, it would be unjust for 790 Eisenhower to retain those benefits.

63. 790 Eisenhower has been unjustly enriched in an amount to be proven at trial.

WHEREFORE, LLD prays that the Court:

a) Enter judgment in its favor and against 790 Eisenhower as set forth in this Complaint;

b) Declare that the June 2016 lease is void and, as such, LLD is occupying 776 on a month-to-month basis and may quit at any time without penalty or other obligation. Alternatively, declare that the November 2011 lease is the operative lease and LLD is, therefore, currently subject to that lease's terms.

c) Award LLD all damages as allowable by law, including punitive damages, in an amount to be proven at trial;

d) Award LLD prejudgment interest, post judgment interest, costs, and attorney fees;

e) Award LLD such other relief as the Court deems just and proper.

Dated this 9th day of August 2019.

Respectfully submitted,

Allen Vellone Wolf Helfrich & Factor P.C.

*/s/ Michael Gilbert*
Michael Gilbert, Esq
Jordan Factor, Esq.
Jeremy T. Jonsen, Esq.
1600 Stout Street, Suite 1100
Denver, Colorado 80202
Phone Number: (303) 534-4499
jfactor@allen-vellone.com
mgilbert@allen-vellone.com
jjonsen@allen-vellone.com

**COUNSEL FOR LAKE LOVELAND DERMATOLOGY, P.C.**