# UNITED STATES BANKRUPTCY COURT
## For the District of Colorado

| | | | |
|---|---|---|---|
| In re: | LAKE LOVELAND DERMATOLOGY, P.C. | \| | Case No.<br>19-11659 MER |
| | Debtor. | \| | |
| | _____ | \| | Chapter<br>11 |
| | LAKE LOVELAND DERMATOLOGY, P.C. | \| | |
| | | \| | |
| | | \| | |
| | | \| | |
| | Plaintiff | \| | Adv. Proc. No.<br>19-01233-MER |
| | | \| | |
| | v. | \| | |
| | | \| | |
| | 790 EISENHOWER, LLC, | \| | |
| | | \| | |
| | Defendant | \| | |

---

### REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT

---

Defendant 790 Eisenhower, LLC, (**"Eisenhower"**), by its undersigned counsel, respectfully submits this reply in support of its motion for an Order dismissing each of the claims asserted against it in the Adversary Complaint filed herein by the Debtor and Plaintiff, Lake Loveland Dermatology, P.C. ("**LLD**"), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012 ("Motion").

### A. Adequacy of Consideration

In their Response to the Motion (at p. 8), Plaintiff LLD concedes that the only basis for the claims in its Complaint is an alleged lack of consideration to LLD, then wholly owned by Patrick Lillis, to replace and supersede the 2011 Lease by the 2012 Lease, and then replace and

supersede the 2012 Lease by the 2016 Lease. Plaintiff pejoratively characterizes the consideration for the replacement Leases in 2012 and 2016 as "pretextual." Yet LLD effectively fails to address Eisenhower's arguments in the Motion that LLD's claims, based on lack of consideration, fail as a matter of law because (1) there was consideration for both the 2012 and 2016 Leases since their terms were extended;  (2) extensions of leases are recognized as providing adequate consideration; (3) adequate consideration is generally presumed where, as here, the contracting parties are closely related; and (4) only in extreme circumstances should a court attempt to assess adequacy of consideration. *See* Motion at pp. 10-13. Here both the tenant – LLD – and the landlord – Eisenhower – were wholly owned by Patrick Lillis – each's effective parent – when the 2012 Lease, and then the 2016 Lease, were entered into to supersede and replace the then existing Lease.

LLD erroneously asserts (Resp., p. 4) that "Eisenhower did not agree to extend the [2011] lease by nine months" via the 2012 Lease. Yet, LLD admitted in its Complaint, at ¶23, that "[t]he new [2012] lease extended the termination date from October 31, 2021 to July 31, 2022." This Complaint allegation was not mistaken. Copies of the 2011 and 2012 Lease are attached hereto as Exhibits 1 and 2; Section Two of the Leases reflects the extension of the Lease term from November 1, 2021 to July 31, 2022.  If what Plaintiff is trying to say is that the 2012 Lease does not expressly state that the term extension was the consideration for the rent increase, there is no law requiring such an express contract statement as a condition to there being adequate consideration.

LLD's argument (Mot., p. 5) that by the 2012 Lease, the ten year term of the 2012 Lease was "reset" as "a function of Lillis wishing to cancel the first [2011] lease from Plaintiff's putative new owners" – is a bald, unsubstantiated statement that makes no sense and ought not bar granting of the Motion. The 2012 Lease was executed on August 1, 2012 (Compl., ¶¶20-21),

which was four years, two and one-half months before Dr. Mott and Skin closed on the purchase of LLD from Lillis (on October 16, 2016). Compl., ¶37. For LLD to assert that Lillis' actions to "replace and supersede" – Plaintiff's own words, *see* Complaint, ¶¶20-21 – the 2011 Lease with the 2012 Lease were part of Eisenhower's plan to conceal the 2011 Lease from this Plaintiff, purchasing LLD over four plus years later, should be summarily rejected by the Court.

Plaintiff (Resp. at p. 6) cites *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1063 (Colo. 2011) to argue that the 2012 Lease somehow lacked consideration because consideration was not intended. Yet, the portions of *Lucht's* quoted by Plaintiff are clearly dicta, as the paragraph cited by Plaintiff was located after the court already held that consideration *was present* in the context of a non-compete agreement signed in exchange for an employee's continued employment, *see id.* at 1061. The paragraph quoted by Plaintiff begins with "Importantly, we note . . . ," *see id.* at 1063, and the language quoted by Plaintiff is never applied to the facts of the matter, as neither party in *Lucht's* ever alleged that the agreement was signed with ill-intent. The Court should reject Plaintiff's attempt to treat mere commentary as binding precedent. What the *Lucht's* Court did state — as Eisenhower points out in its Motion — is that "[e]xcept in extreme circumstances, such as those involving allegations of unconscionability, a court should not judge or attempt to assess the adequacy of the consideration. *Id.* at 1061.

Citing (Resp., pp. 6-7) the Restatement (Second) of Contracts, Plaintiff argues that there was not legal consideration for the 2012 Lease where the term was extended for nine months. Yet, Plaintiff fails to address the multiple cases cited by Eisenhower recognizing that an extension of a lease term constitutes legal consideration in support of a contract. *See Junker v. Carlso*n, 915 N.W.2d 542, 549 (Neb. 2018) (holding that there was adequate consideration for a lease modification when in entering "into the amendment that extended the term of the original lease, [tenants] agreed to pay rent in exchange for the Trust's leasing the farmland to them for

the new duration of the lease."); *Ayres v. Burnett*, 2014-Ohio-4404, ¶ 17 (Ohio Ct. App. 2014) (modification was supported by sufficient consideration via tenant's continued in possession of the premises, enabling the landlord to continue to earn income after the expiration of the original lease term). *Cf. Urban Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 492-93 (Il. App. 2012). Plaintiff cites no authority in support of its conclusory, illogical, and unsupportable argument that the Lease extension of nine months in 2012 was only a pretext. Because a nine-month extension of the 2012 Lease constitutes consideration as a matter of law—as would the four plus year term extension under the 2016 Lease—Plaintiff's claims based on lack of consideration should be dismissed.

Plaintiff most notably ignores *In re Sea Turtle Cinemas, Inc.*, 440 B.R. 438 (Bankr. D.S.C. 2010), which involved similar facts – the same owners increasing rent on a lease between tenant and landlord entities wholly owned – and a similar claim – to avoid a subsequent lease that increased rent on the basis of lack of consideration. *See* Mot., pp. 12-13. Rejecting the debtor-lessee's lack of consideration argument, the Court stated the following pertaining to LLD's claims herein:

> Debtor incurred a detriment from the execution of the amended lease. In exchange, Landlord incurred benefits both from [the lender] and from Debtor. It is immaterial that Debtor did not receive a direct benefit from its execution of the amended lease. **Especially in cases where entities are closely related**, as in the present case, …. [A] holding that the original lease is controlling in this case would upset commercial financial markets. Allowing Debtor to disregard the amended lease agreement in favor of the original lease agreement would pave the way for future lessees who discovery subsequent to the signing of a lease a modification that they are dissatisfied with the terms of the new lease to argue, perhaps successfully, that the modification was for no consideration and therefore is of no effect.

*Id.* 442 (emphasis added).

Plaintiff's effort to distinguish *Sea Turtle* fails. Plaintiffs argue (Resp., p. 7) that LLD and Eisenhower were not closely related merely because they each had the same owner; LLD

attempts to distinguish *Sea Turtle* because there the tenant and landlord entities were not owned by a single person, but by "the same group of individuals and entities". This distinction is meaningless. Whether owned by one or several of the same owners, the landlord-tenant relationship was found by the *Sea Turtle* court to be "closely related", making that court's analysis of the adequacy of consideration issue directly on point and wholly supportive of Eisenhower's position.

### B.  Statute of Limitations

Plaintiff proffers no real argument as to how or why any claim to avoid the 2012 Lease is not barred by the three year statute of limitations.  *See* Response, pp. 9-10.  Plaintiff only argues, without citation to any legal authority, that it should be able to revive a claim on which the statute of limitations has completely run simply because the ownership of Plaintiff later changed hands.  However, it is undisputed that from the time the 2012 Lease was signed – by LLD – and during the *entirety* of the running of the three-year statute of limitations related to the claim to avoid the 2012 Lease, LLD knew of the terms of the 2012 Lease it signed—that the rental rate had been increased—as LLD was wholly owned by Dr. Lillis during the three year period, and for more than another year after that.  Plaintiff's argument that it should be able to re-open a long since expired statute of limitations simply because it changed ownership after the statute of limitations ran is insupportable.  To hold otherwise would allow new owners of a business to second-guess and re-open old contracts on which the statute of limitations has expired because the new owner may not have been privy to facts related to the contract's formation.  The purpose of the statute of limitations is "promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims."  *Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008).  Any claim based on the alleged lack of consideration of the 2012 Lease is time-barred.

### C. Plaintiff's Equitable Subordination and Unjust Enrichment Claims

In its Response (at pp. 10-12), Plaintiff effectively concedes that its equitable and unjust enrichment claims are based entirely on its allegation that Patrick Lillis somehow acted improperly when, as the then sole owner of LLD and Eisenhower, he superseded and replaced the 2011 Lease with the 2012 Lease, and four plus years later, the 2012 Lease with the 2016 Lease.  Yet, as argued in the Motion and above herein, it was not improper, and Plaintiff has failed to state a claim based on, Lillis's decision, as the sole owner of the landlord and tenant entities, to increase the rent when coupled with an extension of the Lease term.  As pointed out in the Motion (at p. 8), nowhere in the Complaint does LLD allege that the rental rate under the 2012 Lease or the 2016 Lease was above market rate. And Plaintiff wholly ignores the analysis in Section IV.B. of the Motion – that as a matter of law Eisenhower breached no duty, fiduciary or otherwise, to LLD in entering into the 2012 and/or 2016 Leases. *See* Motion analysis, at pp. 13-19.   Since there was no duty preventing Lillis, as LLD's sole owner, from increasing the Lease rent paid and received by his then wholly owned entities, there can be no plausible argument that it was inequitable or unjust for Lillis to enter into these Leases prior to selling LLD to Dr. Mott and Skin in October 2016 – and after disclosing the 2016 Lease and affording Dr. Mott, Skin, their counsel and financial advisor, full opportunity to perform due diligence on the 2016 Lease, including the reasonableness of the Lease rent and ten year term.[1]

LLD's claim for unjust enrichment also fails as a matter of law because the claim is barred by the applicable Colorado statute of limitations.  LLD asserts it can recover rent paid by LLD since August 2012 in excess of $825,000 under its unjust enrichment theory.  However, "an injury is different from the damages that flow from the injury . . . . [D]amages do not need to be

---

1  Following oral argument on September 26, 2019, the Court acknowledged the 2016 Lease is the operative lease unless the Court hereafter orders otherwise.

known before accrual of a claim." *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 147 n.8 (Colo. 2007); *see Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo. App. 1998) (uncertainty as to the precise extent of damage neither precludes the filing of a suit nor delays the accrual of a claim for purposes of the statute of limitations); *see also Duell v. United Bank*, 892 P.2d 336, 340 (Colo. App. 1994) ("[O]nce some injury has occurred,  the statute [of limitations] begins to run, notwithstanding that further injury continues to occur."). The 2011 Lease was executed approximately eight years before the petition date, and the 2012 Lease was executed approximately seven years before the petition date. LLD and Eisenhower knew of all lease terms at the time each was executed, and far more than three years prior to the petition date.

Under Colorado law, "unjust enrichment is a form of relief in quasi-contract or contract implied in law [so] the time within which to assert such a claim ordinarily is assessed under the three-year statute of limitations for contract actions." *Weinman v. Crowley, Adv. Proc. No. 17-1195-TBM*, (Bankr. D. Colo. 2017) (quoting *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011)); *see also* C.R.S. § 13-80-101(1)(a) (providing for a three year statute of limitations after the alleged cause of action accrues.) Applying the applicable statute of limitations to defeat stale claims:

> . . . comports with the purposes of underlying statutes of limitations, that is, of "discourag[ing] unnecessary delay and forestall[ing] prosecution of stale claims." *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 886 (Colo. 2010) (quoting *Jones*, 828 P.2d at 224). These purposes would be defeated if plaintiffs were allowed to delay filing tortious interference claims until, as was the case here, years later when a contingency is resolved, thus requiring parties to litigate claims arising out of events which occurred long ago.

*Sterenbuch*, 266 P.3d at 434. LLD's asserted unjust enrichment claim for rent "since August 2012" is time barred on its face by the applicable statute of limitations.

Even if the unjust enrichment claim was not time barred, that particular claim cannot prevail on the merits under a Rule 12(b)(6) standard. The Colorado Supreme Court recently reaffirmed the elements of an unjust enrichment claim:

> [A] plaintiff must prove three elements: "(1) [T]he defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation."

*City of Arvada v. Denver Health*, 403 P.3d 609, 616 (Colo. 2017) (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)). LLD asserts that Eisenhower received a benefit at LLD's expense: increased rent "without any consideration whatsoever." This inaccurate premise is belied by the plain language of the 2016 Lease, and LLD ignores the extended four-year term of the lease received by LLD, which was adequate consideration and not unfair or unjust. *See* Section A., *supra*. Accordingly, LLD's claim for unjust enrichment fails as a matter of law based on the plain and unambiguous language in the operative 2016 Lease.

Finally, LLD's equitable subordination claim also fails, given that there was nothing inequitable, unfair, illicit, or unjust about the 2016 Lease transaction. Under the clear terms of the 2016 Lease, LLD received a four-year extension of its right to possession in exchange for a 5.3% increase in the rent rate from the prior terminated 2012 Lease. "Equitable subordination is an extraordinary remedy to be employed by courts sparingly. 'Wrongful or unpredictable subordination spans legal uncertainty of a particular type: the risk that a court may refuse to honor an otherwise binding agreement on amorphous grounds of equity.'" *In re Alternate Fuels, Inc.*, 789 F.3d 1139 (10th Cir. 2015) (quoting *In re Lifschultz Fast Freight*, 132 F.3d 339, 347 (7th Cir. 1997)). At the time the 2016 Lease was executed, LLD and Eisenhower were well aware of all prior leases – having executed them – and adequate consideration was given in

exchange for any increased rent. On these indisputable facts, any claim for equitable subordination must fail.

WHEREFORE, for the reasons stated in the Motion and herein, Eisenhower requests that the Motion be granted, and that it be awarded its attorneys' fees and costs in filing the Motion.

DATE: October 7, 2019

SENN VISCIANO CANGES, P.C.

/s/ *Frank W. Visciano*_____
Frank Visciano
1700 Lincoln Street, Suite 4300
Denver, CO 80203
Phone Number: (303) 298-1122
fvisciano@sennlaw.com

MARKUS WILLIAMS YOUNG & HUNSICKER

*/s/Matthew T. Faga*_____
Matthew T. Faga
Jennifer M. Salisbury
1700 Lincoln Street, Suite 4500
Denver, CO  80203
Phone Number: (303) 318-0120
mfaga@markuswilliams.com
jsalisbury@markuswilliams.com

**CO-COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019 a true and correct copy of **REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT** was served via CM/ECF on all counsel of record in this Adversary Proceeding, with a courtesy copy sent via e-mail to the following:

Jordan D. Factor on behalf of Plaintiff Lake Loveland Dermatology P.C.
jfactor@allen-vellone.com ; la@allen-vellone.com

Michael T. Gilbert on behalf of Plaintiff Lake Loveland Dermatology P.C.
mgilbert@allen-vellone.com

Jeremy T. Jonsen on behalf of Plaintiff Lake Loveland Dermatology
jjonsen@allen-vellone.com

Lance J. Goff on behalf of Plaintiff Kevin John Mott
lance@goff-law.com ; bart@goff-law.com

Lee M. Kutner on behalf of Plaintiff Skin P.C.
lmk@kutnerlaw.com ; vlm@kutnerlaw.com


*/s/ Serina Schaefer*
Serina Schaefer for Markus Williams
Young and Hunsicker, LLC